UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEBAMOFF ENTERPRISES, INC. d/b/a CAP N' CORK, RANDY LEWANDOWSKI, and LUTHER STRODER, | ) ) ) | |
| *Plaintiffs*, | ) | 1:09-cv-744-JMS-TAB |
| | ) | |
| *vs.* | ) | |
| | ) | |
| P. THOMAS SNOW, IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE INDIANA ALCOHOL & TOBACCO COMMISSION, | ) ) ) | |
| *Defendant*. | ) | |

## <u>ORDER</u>

Indiana law permits a wine dealer to make off-premises deliveries of wine to a location designated by a customer only if the delivery is made by the dealer itself or a dealer's employee who holds an employee permit. Ind. Code § 7.1-3-15-3(d). Plaintiffs Lebamoff Enterprises, Inc. d/b/a Cap N' Cork, is a Fort Wayne, Indiana wine dealer that would prefer to make off-premises deliveries through a common carrier rather than through its permitted employees. Randy Lewandowski, and Luther Stroder are wine consumers who live in the Indianapolis area, who do not want to travel to Fort Wayne to pick up wine at Cap N' Cork, and who would prefer to have it delivered directly. The Plaintiffs will be referred to collectively "<u>Cap N' Cork</u>" as none makes any unique argument. Cap N' Cork claims the Indiana law at issue is both unconstitutional and preempted by federal statute.

Presently before the Court are Cross-Motions for Summary Judgment filed by Cap N' Cork and Defendant P. Thomas Snow, in his official Capacity as Chairman of the Indiana Alcohol & Tobacco Commission ("<u>ATC</u>").

# I.

## STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would—as a matter of law—conclude in the moving party's favor and is thus unnecessary.  *See* Fed. R. Civ. Pro. 56(c).  When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial...against the moving party."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986).  Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture."  *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).  The non-moving party must set forth specific facts showing that there is a material issue for trial and cannot rely upon the mere allegations or denials in the pleadings.  Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 317.  Moreover, the non-moving party must do more than just demonstrate a factual disagreement between the parties; it must demonstrate that the disputed factual issue is "material."  *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).  The key inquiry is the existence of evidence to support a plaintiff's claims or affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact.  *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

Cross-motions for summary judgment do not automatically mean that all questions of material fact have been resolved.  *Franklin v. City of Evanston*, 384 F.3d 838, 842 (7th Cir. 2004).  The Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion.  *Id.* at 483.

After having assessed the claims of the parties in accordance with the standards outlined above, the Court concludes that ATC is entitled to summary judgment on both counts.  There-

fore, in what follows, the Court makes all reasonable factual inferences in favor of Cap N' Cork. *See* Fed. R. Civ. Pro. 56(c).

## II.

### BACKGROUND

### A) Indiana's Three-Tier System of Wine Distribution

Indiana, like many states, has chosen to regulate the distribution of wine within its borders by requiring that producers sell exclusively to permitted wholesalers who, in turn, may sell only to permitted retailers. *See generally* Ind. Code §§ 7.1-3 et seq. This is a nationally recognized scheme known as "the three-tier system." In the three-tier system, the chain of commerce begins at the winery and ends with the consumer. First, the winery, which can be in-state or out-of-state, receives the order—either through direct purchases from customers, through solicitation of business from fulfillment companies, or through retail entities such as Cap N' Cork that place orders on behalf of customers. [*Id.*]

When the fulfillment process is in play, the wine is pre-packaged and pre-addressed by the winery. [Dkt. 18-3 at 1-2.] Second, the winery ships the wine to an Indiana wholesaler. Third, the wholesaler transfers the wine to an Indiana retailer (permitted as a wine dealer)—here, Cap N' Cork—for eventual delivery to the Indiana consumer. [Dkt. 17 at 2.] Within this framework, consumers may purchase wine for off-premises consumption only from permitted retailers and may do so only in face-to-face transactions.

In accordance with the three-tier system, any wine retailer within Indiana's borders must obtain a "wine dealer permit." Ind. Code § 7.1-3-15-1. Holders of wine dealer permits are allowed to make off-premise deliveries of up to three cases of wine per transaction, but only if the face-to-face requirement of the three-tier system is met. To meet the face-to-face requirement, a

retailer must have a delivery permit and use its own employee to deliver the alcohol to consumers within Indiana:

> [A] wine dealer . . . may deliver wine . . . to a customer's residence, office, or designated location . . . by the permit holder or an employee who holds an employee permit. The permit holder shall maintain a written record of each delivery for at least one (1) year that shows the customer's name, location of delivery, and quantity sold.

Ind. Code § 7.1-3-15-3(d).

Wine dealers, or wine dealer employees who have employee permits, are required to receive server training pursuant to Indiana Code § 7.1-3-1.5. Server training is designed to educate employees on the selling, serving, and consumption of alcoholic beverages, with an emphasis on preventing the distribution of alcohol to minors. Ind. Code § 7.1-3-1.5-4.3. Such training is required to include methods for properly and effectively:

> (i) checking the identification of an individual;
> (ii) identifying an illegal identification of an individual; and
> (iii) handling situations involving individuals who have provided illegal identification.

Ind. Code § 7.1-3-1.5-6(e).

**B) Two Exceptions to the Three-Tier System**

Indiana recognizes two exceptions to the three-tier system with respect to the sale and delivery of wine. The first exception applies to wineries in any state that sell no more than 1,000,000 gallons of per year wine to Indiana. *See* Ind. Code § 7.1-3-12-4. Any such winery is eligible for a "farm winery permit," which allows wineries to sell directly to customers on premises, to conduct business at up to three off-premise locations, to sell wine directly to consumers at a farmer's market operated on a not-for-profit basis, and to sell wine directly to a holder of a wholesaler's permit. Ind. Code § 7.1-3-12-5(a)(3), (b), (a)(4), (a)(5).

The second exception to the three-tier system is likewise available to wine producers who sell no more than 1,000,000 gallons of wine per year to Indiana. *See* Ind. Code § 7.1-3-26-7(a)(7). Such a producer is eligible for a "direct wine seller's permit." A direct wine seller's permit holder may ship no more than 3,000 cases of wine per year and no more than 24 cases of wine per year to any given customer. *See* Ind. Code §§ 7.1-3-26-9(2)(e), 7.1-3-26-12. Holders of this permit are allowed to bypass the three-tier system by selling and shipping wine directly to a customer, provided:

A) The consumer provides the winery with the following information in an initial face-to-face transaction:
    1. Name, telephone number, Indiana address, or Indiana business address;
    2. Proof that the consumer is twenty-one years of age or older;
    3. A verified statement that the consumer is twenty-one, has an Indiana address, and intends to use the wine for personal purposes;
B) The Permit holder labels the shipping container with the following,
C) "CONTAINS WINE. SIGNATURE OF PERSON AGE 21 OR OLDER REQUIRED
D) FOR DELIVERY";
E) The Permit holder ships the wine using the holder of a valid carrier's alcoholic beverage permit;
F) The Permit holder directs the carrier to verify that the recipient is twenty-one or older;
G) The Permit holder does not ship more than 216 liters (24 cases) of wine to
H) any consumer in a calendar year; and
I) The Permit holder remits all excise, sales, and use taxes on a monthly basis.

Ind. Code § 7.1-3-26-7.

Though the laws providing for the farm winery and direct wine sellers allow direct sales to a consumer without the intervention of a retailer or wholesaler, they preserve the requirement of a face-to-face transaction. For farm winery permit holders, they sell directly and in person to the consumer. For direct wine sellers the face-to-face requirement is fulfilled at the time the wine is ordered, as opposed to the time of delivery.

With the exception of farm winery permit holders and direct wine seller's permit holders, as well as the delivery statute at issue, a separate provision in Title 7.1 contains an explicit and

general ban on the direct shipment of alcoholic beverages. Ind. Code §§ 7.1-3-12-4, 7.1-3-26-9(2)(e); 7.1-3-26-12; 7.1-5-11-1.5(a). Neither the three-tier system itself, the exceptions to the three-tier system, nor the more general ban on direct shipment is being challenged here.[1]

### C) Situating Cap N' Cork Within the Three-Tier System

Cap N' Cork is among the approximately 10,667 wine dealers in Indiana permitted to sell wine to consumers through the three-tier system. [Dkt. 30-5 at 9.] Specifically, Cap N' Cork is permitted under a wine dealer permit, the only permit for which it is eligible. [Dkt. 27 at 7.] It operates approximately 15 package liquor stores in the greater Fort Wayne area. [Dkt. 1-1 at 36.] Cap N' Cork delivers a total of 13,000 cases of wine per year, which totals about $1.5 million in sales. [Dkt. 30-6 at 1.]

Some of Cap N' Cork's wine sales are referred to it by out-of-state wine fulfillment companies. [Dkt. 17 at 2-3.] Wine fulfillment companies are businesses that receive orders from consumers who seek to purchase wine that may not be available from a local retailer, and/or who prefer direct delivery of wine to their business or personal residence. Sales are generated in response to advertisements, the internet, magazine reviews, or other media sources. [*Id.* at 3.] The wine ordered from fulfillment companies is then shipped to Indiana and delivered to consumers through the three-tiered system. [*Id.* at 3.]

Because Cap N' Cork chooses to deliver wine throughout Indiana, and because Indiana law requires Cap N' Cork to deliver only via a permit holder or its permitted employees, some distant deliveries are less convenient and more costly for Cap N' Cork. [Dkt. 17 at 3-5.] Ac-

---

[1] ATC contends that Cap N' Cork also seeks to invalidate Indiana Code § 7.1-5-11-1.5(a), which generally bans the direct shipment of all alcoholic beverages directly to Indiana consumers unless a permittee holds a direct wine seller's permit issued pursuant to Indiana Code § 7.1-3-26—a permit which no wine retailer, or any other alcoholic beverage retailer or dealer is eligible to hold. Ind. Code § 7.1-5-11-1.5(a); [dkt. 31 at 1]. Nothing in the briefing here, however, suggests that Cap N' Cork in fact raises such a challenge, so the Court will not address any challenge to the statutory scheme reflected by § 7.1-5-11-1.5(a).

cording to Cap N' Cork, it is not economically feasible for the company to use its own delivery vehicles to make small consumer deliveries beyond a fifteen mile radius of its stores, nor is it feasible for the consumers to travel to Fort Wayne to pick up shipments. [*Id.* at 4.] As noted, the two consumer plaintiffs live in the Indianapolis area. [Dkt. 1-1 at 37.]

Cap N' Cork stated in oral argument that it does not seek to bypass the three-tier system. But in December 2008, it entered into a shipping contract with UPS [dkt. 30-4] to make deliveries of wine to Indiana customers in contravention of the face-to-face delivery requirement of § 7.1-3-15-3(d). Cap N' Cork has received three citations from ATC for using UPS to deliver to its customers. [Dkt. 18-5.] Based on these citations, Cap N' Cork filed a lawsuit in state court challenging the constitutionality of § 7.1-3-15-3(d) within the three-tier system. [Dkt. 17 at 3-4.] The Indiana Attorney General removed the case to this Court. [*Id.* at 5.]

### III.

#### DISCUSSION

Cap N' Cork now brings Commerce Clause and preemption challenges against § 7.1-3-15-3(d), which requires that a permitted wine dealer use its own permitted employees to make off premises delivery of wine to consumers within Indiana.[2]

### A) Commerce Clause Challenge

Although Cap N' Cork has struggled to articulate a cogent or consistent basis for its constitutional challenge, at oral argument counsel asserted that its Commerce Clause challenge to § 7.1-3-15-3(d) is predicated on three distinct claims: "that [the statute] discriminates against UPS, the interstate carrier, which is direct discrimination against interstate commerce; that it discriminates against interstate sellers like the New York Times Wine Club compared to the local sellers

---

[2] The original Complaint also alleged that § 7.1-3-15-3(d) violated the Indiana Constitution, Art. I, § 23, and the Equal Protection Clause, but Cap N' Cork abandoned those claims during briefing on the instant motions. [Dkt. 29 at 1.]

like Cap N' Cork Retail; and [that] it discriminates in practical effect against out-of-state wineries . . . whose only feasible access [to] the market is through this fulfillment process." [Dkt. 43 at 61-62.] Because the statute is alleged to be facially discriminatory, Cap N' Cork argues that the Court should apply a strict scrutiny analysis, under which it would find the statute unconstitutional. [Dkt. 17 at 6.] Furthermore, Cap N' Cork contends that even if the Court does not apply strict scrutiny, this statute has a disparate impact on interstate commerce such that it fails the *Pike v. Bruce Church*, 397 U.S. 137 (1970) balancing test under the authority of *Granholm v. Heald*, 544 U.S. 460 (2005). [*Id.* at 3.]

ATC maintains, however, that § 7.1-3-15-3(d) is not discriminatory at all because it regulates wine deliveries by Indiana wine dealers the exact same way regardless of whether the wine was sold through intrastate or interstate commerce. [Dkt. 27 at 11.] Alternatively, ATC argues that even if the statute has a disparate impact on interstate commerce, the local government interest the statute effectuates outweighs any burden, such that it passes muster under *Pike*. Moreover, because the statutes at issue in *Granholm* were invalidated based on their facial discrimination against out of state commerce, ATC argues the statute at issue in this case is distinguishable from *Granholm and* is instead analogous to *Baude v. Heath*, 538 F.3d 608 (7th Cir. 2008), a more recent case wherein a similar Indiana statute requiring a face-to-face transaction survived the *Pike* balancing test. [Dkt. 27 at 12.]

In bringing its challenge to § 7.1-3-15-3(d), Cap N' Cork must overcome the strong presumption that the statute is constitutional. *See Bowen v. Kendrick*, 487 U.S. 589 (1988); *Hines v. Elkhart Gen. Hosp.*, 603 F.2d 646 (7th Cir. 1979). Consistent with Seventh Circuit authority, this Court will construe a statute to be constitutional if possible. *See Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 508 (7th Cir. 1998).

### 1) **Teachings from** *Granholm*

The Supreme Court in *Granholm v. Heald* provided significant guidance concerning Commerce Clause challenges to state laws regulating the delivery of wine. *Granholm v. Heald*, 544 U.S. 460 (2005). The court addressed the tension between two constitutional provisions, the Commerce Clause and the Twenty-First Amendment. It articulated the principles that frame this Court's analysis of the constitutionality of the challenged statute under the Commerce Clause. *See* 544 U.S. 460.

In *Granholm*, the Supreme Court invalidated two laws that were explicitly discriminatory because they permitted in-state wineries to ship directly to customers while requiring out-of-state wineries either to ship via in-state distributors or to establish a distribution operation in-state. 544 U.S. at 473-74. The Supreme Court's decision in *Granholm* rested on the dispositive fact that wine-distribution laws at issue were "straightforward attempts to discriminate in favor of local producers." *Granholm*, 544 U.S. at 489. In invalidating those laws under the Commerce Clause, the *Granholm* court emphasized that the wine-importation and distribution laws were unconstitutional because they deprived out-of-state wineries of "their right to have access to the markets of other States on equal terms." *Id*. at 473.

The *Granholm* court made clear, however, that the Twenty-First Amendment gives the states broad power to regulate liquor distribution so long as state law does not burden out-of-state producers or shippers simply to give a competitive advantage to in-state businesses. *See* U.S. Const. Art I, § 8; *Granholm*, 544 U.S. at 462-63. More specifically, "state laws cannot ban, or severely limit, the direct shipment of out-of-state wine while simultaneously authorizing direct shipment by in-state producers; if a [s]tate chooses to allow direct shipment of wine, it must, under the Commerce Clause, do so on evenhanded terms." *Id*. at 461. Indeed, in all but the narrowest circumstances, state alcohol laws violate the Commerce Clause if they mandate "differen-

tial treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id*. at 470.

But "state policies are protected under the Twenty-First Amendment when they treat liquor produced out-of-state the same as its domestic equivalent." *Id*. at 489. In that circumstance, states may go so far as to prohibit altogether the direct shipment of alcohol. *See id*. at 482-83 (noting that the Webb-Kenyon Act, 27 U.S.C. § 122, explicitly allows states to prohibit direct shipment of alcohol to consumers). If out-of-state and in-state wine deliveries are treated the same way, "the Twenty-First Amendment grants the states virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." *Id*. at 488.

The court in *Granholm* was also clear in blessing the three-tier system as "unquestionably legitimate" and compliant with the Commerce Clause. 544 U.S. at 489. The validity of this system has been recognized by courts nationwide—it is an efficient means of controlling the distribution of wine, an effective means of promoting temperance, and a facilitating means of collecting excise taxes. *See Granholm*, 544 U.S. at 488.

In the wake of *Granholm*, the Seventh Circuit has confronted head-on the constitutionality of Indiana's wine distribution regime. *Baude v. Heath*, 538 F.3d 608 (7th Cir. 2008). In this context, the Seventh Circuit articulated three possible tests for evaluating constitutionality depending on the extent to which the law burdens interstate commerce: strict scrutiny, Pike balancing, and rational basis review.

Strict scrutiny analysis is reserved for statutes that are explicitly discriminatory or that, in their terms, treat in-state and out-of-state producers differently. *Baude,* 538 at 613. Explicitly discriminatory statutes are invalid virtually *per se*. *Granholm*, 544 U.S. at 476. Generally, strict

scrutiny is only applied to regulations which insidiously operate to promote protectionist or iso-lationist objectives. *See Hunt v. Washington State Apple Adv. Commn'*, 432 U.S. 333, 349-351 (1977). Whether strict scrutiny is a proper analytical tool in this context rests principally on whether a law directs alcohol produced out-of-state to be treated differently than that produced in-state. *Granholm*, 544 U.S. at 498.

If a law is not facially discriminatory, does not act as a powerful, isolationist restriction on interstate commerce but nevertheless has some discriminatory effect, courts apply the flexible balancing standard articulated in *Pike*:

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

*Pike*, 397 U.S. at 142. "State laws regularly pass this test, for the Justices are wary of reviewing the wisdom of legislation (after the fashion of *Lochner*) under the aegis of the [C]ommerce [C]lause." *Baude*, 538 F.3d 608; *see also Cavel International, Inc. v. Madigan*, 500 F.3d 551 (7th Cir.2007); *Nat'l Paint*, 45 F.3d 1124.

If a law is neither facially discriminatory nor burdensome on interstate commerce, courts use rational-basis review when evaluating its constitutionality. *Nat'l Paint*, 45 F.3d at 1131. Under the rational basis test, the challenged legislation "is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne*, 473 U.S. at 440.

### 2) Determining the Level of Analysis for Evaluating the Constitutionality of § 7.1-3-15-3(d)

In analyzing the statute at issue under the Commerce Clause, the Court must first determine the level of analysis the statute warrants; next, it must determine whether the statute overcomes the challenge. *See Nat'l Paint,* 45 F.3d at 1124.

### a.  Does strict scrutiny apply?

Cap N' Cork argues that § 7.1-3-15-3(d) is facially discriminatory and should therefore be subject to the heightened scrutiny test.  [Dkt. 29 at 1-2.]  First, Cap N' Cork argues that the statute prohibits retailers such as Cap N' Cork from using common carriers to deliver out-of-state wine but allows certain wineries (that hold permits for which wine retailers are not eligible) to do so.  [Dkt. 29 at 27.]  In its briefing, Cap N' Cork emphasizes that § 7.1-3-15-3(d) discriminates against two similarly situated entities—wine retailers and wineries—insofar as they market the same product.  [*Id.* at 17.]  Drawing on the authority of *General Motors Corp. v. Tracy*, 519 US 278, 298-99 (1997), Cap N' Cork argues that wineries and retailers are similarly situated insofar as they compete to sell similar products.  [*Id.*]  As such, Cap N' Cork argues, the statute is facially discriminatory by virtue of treating these entities differently. [*Id.* at 18.]

However, in oral argument, Cap N' Cork took its facial discrimination argument one step farther, saying that the law "discriminates against UPS, the interstate carrier, which is direct discrimination against interstate commerce. . . ."[3]  [Dkt. 43 at 61-62.]  Also at oral argument, Cap N' Cork argued that the statute "discriminates against interstate sellers like the New York Times Wine Club compared to the local sellers like Cap N' Cork Retail…"  [*Id.*]  To this point, Cap N' Cork presents the affidavit of William Nelson, to show that "small, family-owned farm-based [wineries] that produce fewer than 10,000 cases per year" are cannot effectively market indepen-

---

[3] Cap N' Cork relies heavily on the "original package" doctrine, which was established in the late 19th Century to protect alcohol moving through interstate commerce from state regulation when it remained in its original package.  *Leisy v. Hardin,* 135 U.S. 100, 119 (1890).  Under this doctrine, even nondiscriminatory regulations "directly affecting interstate commerce" were prohibited by the Commerce Clause.  *Bowman v. Chicago & Northwestern R. Co., 125 U.S.* 564, 496-97 (1888).  However, the original package doctrine pre-dated the Twenty-First Amendment and has been described by the Supreme Court in *Granholm* as "since-rejected."  544 U.S. at 477.  The Court takes heed of the Supreme Court's characterization and declines to follow this "rejected" doctrine.

dently through the three-tier system, so they rely on fulfillment companies to navigate they system for them.  [Dkt. 30-8 at 2.]

ATC argues, to the contrary, that the statute at issue does not facially discriminate against any of the entities Cap N' Cork mentions.  Rather, is facially neutral and operates as an evenhanded regulation that simply requires off premises delivery of all wine by a permitted employee in a face-to-face transaction .  [Dkt. 27 at 16.]  The statute does not address common carriers in any way.  [*Id.* at 24.]  Moreover, the statute makes "absolutely no distinction as to the origin of the wine" being delivered.  [*Id.* at 16]  And as a facially neutral statute, ATC argues that § 7.1-3-15-3(d) is not subject to strict scrutiny analysis.  [*Id.*]

The Court agrees with ATC's assessment of the statute.  Section 7.1-3-15-3(d) directly regulates wine dealers—not common carriers—and, on its face, the statute treats all wine that targeted for off premises delivery through Indiana wine dealers exactly the same way.  The Court also finds merit in ATC's argument that wineries and wine retailers have a markedly different role in Indiana's highly regulated alcohol market, so their differential treatment under Indiana law does not constitute facial discrimination, [dkt. 27 at 11].  And wineries' sales (whether permitted as farm wineries or direct wine sellers) still require a face-to-face transaction at some point in the sales process.  Finally, the statute in no way discriminates against wine clubs which are treated the same as any aspiring participant in the three-tier system.  They have no special status to compel the Court, or more importantly the Indiana General Assembly, to treat them otherwise.  The requirement that deliveries of wine by an Indiana wine retailer occur in a face-to-face transaction by a permit holder is a facially neutral regulation, and, as such, § 7.1-3-15-3(d) is not subject to strict scrutiny.  *Granholm*, 544 U.S. at 487.

### b.  Does § 7.1-3-15-3(d) pass the *Pike* balancing test?

In the absence of facial discrimination, Cap N' Cork argues that the "ban on delivery by common carriers discriminates against interstate commerce and favors local business interests" to the extent that it fails the *Pike* balancing test.  [Dkt. 31 at 7.]   At oral argument, Cap N' Cork restated this claim: "[the statute discriminates in practical effect against out-of-state wineries . . . whose only feasible access [to] the market is through this fulfillment process."   This claim, which the Court re-characterizes as Cap N' Cork's disparate impact claim, rests on the allegations that "evidence shows that the ban has a substantial adverse impact on interstate commerce by decreasing selection, raising prices, and closing market access to many small wineries."  [Dkt. 29 at 3.]

ATC argues, however, that § 7.1-3-15-3(d) neither explicitly discriminates against nor excessively burdens interstate commerce.  As a result, ATC argues that the statute should undergo rational basis review.  [Dkt. 27 at 11.]   Nevertheless, ATC suggests, "should this Court apply *Pike* to the current action, the State has identified local benefits advanced by the face-to-face delivery requirements which are not 'clearly excessive' as compared to the local benefits."  [*Id.* at 16.]

Because ATC has chosen to defend the statute under the *Pike* test, and because even facially neutral statutes regulating wine distribution have historically been analyzed in light of their potential burdens, *see Baude,* 538 F.3d at 608, the Court will undertake a *Pike* analysis.[4]   397 U.S. at 142.

---

[4] Because the statute ultimately survives *Pike* balancing, the Court will not go on to consider whether it overcomes rational basis review, which is an even less stringent test for constitutionality.  *Nat'l Paint & Coatings*, 45 F.3d at 1131.

Recently, the Seventh Circuit evaluated several Indiana laws governing distribution of wine within Indiana's three-tier system in *Baude v. Heath*. 538 F.3d 608 (7th Cir. 2008.) The plaintiffs in *Baude* challenged two Indiana laws. The first law stated that "a winery may sell direct to consumers only if it does not hold a permit or license to wholesale alcoholic beverages issued by any authority" and is not owned by an entity that holds such a permit. Ind. Code § 7.1-3-26-7(a)(6). The *Baude* court, in short order, found this provision discriminatory on its face, and therefore invalid. The statute was rejected because it prevented direct shipment of almost all out-of-state wine while allowing all wineries in Indiana to sell directly to Indiana customers and was clearly written to do the same. *Id*.

The second challenged statute frames the bulk of the court's analysis in *Baude*. This statute required any consumer who wanted to receive direct shipments of wine from any winery—inside or outside of Indiana—to visit the winery once and supply proof of name, age, address, and phone number, plus a verified statement that the wine was intended for personal consumption. *Baude*, 538 F.3d at 613; see also Ind. Code §§ 7.1-3-26-6(4), 7.1-3-26-9(1)(A). In assessing this statute, the *Baude* court determined that because "the rule applie[d] to every winery, no matter where it [wa]s located," it was not facially discriminatory. 538 F.3d at 611. Nevertheless, (although neutral in terms,) the statute had the effect of preventing interstate shipments directly to Indiana consumers, while allowing direct intrastate shipments. *Id*. at 612.

In light of the potential burden the statute posed on interstate commerce, the *Baude* court employed *Pike* balancing, noting: "If a statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." 538 F.3d at 611; *see also Pike v. Bruce Church*, 397 U.S. 137, 142 (1970).

In employing *Pike* balancing, the court in *Baude* first determined that "keeping alcohol out of minors' hands is a legitimate, indeed a powerful, [local] interest." *Id.* at 613. In response to plaintiffs' argument that the face-to-face identification did not in fact reduce the number of minors acquiring alcohol, the *Baude* court, even in the absence of compelling data to support the marginal benefits of in-person identification, stated:

> Indiana thinks that in-person verification with photo ID helps to reduce cheating on legal rules, for both buying wine and voting (and perhaps other subjects). After the Supreme Court held in *Crawford v. Marion County Election Board,* [533] U.S. [181] (2008), that a belief that in-person verification with photo ID reduces vote fraud has enough support to withstand a challenge under the first amendment, it would be awfully hard to take judicial notice that in-person verification with photo ID has no effect on wine fraud and therefore flunks the interstate commerce clause.

*Id.* Therefore, the court accepted Indiana's reasoning that face-to-face verification would reduce the wine shipments that went to minors, as intended by the state. *Id.* at 615.

In determining whether the statute's burden on interstate commerce was excessive, the *Baude* court also accepted the plaintiffs' assertion that the cost of verification per winery would undoubtedly rise with distance between the consumer and the wineries, thus favoring wineries closer to Indiana buyers. 538 F.3d at 613. The court further noted that such a regulation might favor larger wineries over smaller wineries. *Id.* These burdens alone, however, were not excessive enough to render the statute unconstitutional in light of the local interest the face-to-face requirement supported. Moreover, the court recognized that, although purchasing and selling wine through wine clubs may be profitable for the dealer and potentially convenient for the consumer, there is no requirement that the Indiana General Assembly enact laws to permit the direct shipment of alcohol simply because the shipment may originate from out-of-state. *Id.* at 612.

With respect to plaintiffs' attempt to establish that the statute in *Baude* posed an excessive burden, the *Baude* court declared, "it is impossible to tell whether a burden on interstate

commerce is "clearly excessive in relation to the putative local benefits without understanding the magnitude of both burdens and benefits." 538 F.3d at 613. Although "exact figures are not essential (no more than estimates may be possible) and the evidence need not be in the record if it is subject to judicial notice . . . it takes more than lawyers' talk to condemn a statute under *Pike*." *Id*. at 614. In light of the scarcity of empirical data concerning the effects on interstate commerce, the *Baude* court held that the plaintiffs did not establish the existence of an excessive burden that might undermine the legitimate state interest of keeping alcohol out of the hands of minors. 538 F.3d at 615. Therefore, the court in *Baude* upheld the second challenged law. *Id*.

ATC argues that the statute challenged here is similar to the second statute at issue in *Baude*. The Court agrees that the cases are analogous—both the statute in *Baude* and the statute at issue here require permitted wine retailers to make face-to-face contact with any Indiana consumer, regardless whether the consumer is buying wine shipped to the retailers from wineries inside or outside of Indiana. 538 F.3d at 611. But the Court finds that the statute at issue in *Baude*—upheld under *Pike* balancing—was actually far more burdensome than the statute Cap N' Cork challenges here.

### 1. Is there a legitimate local interest?

ATC argues that reducing minors' access to alcohol is a core policy of both federal and state governments, and that § 7.1-3-15-3(d) promotes this interest by ensuring that alcohol is only delivered by someone trained to ascertain whether the consumer is over 21. [Dkt. 27 at 16.] Cap N' Cork attempts to undermine the position that there is a legitimate government interest here by posing dismissive rhetorical questions: "Just what is the state's interest? Keeping the wine out of the hands of minors?" [Dkt. 17 at 8-9.]

In *Baude*, however, the Seventh Circuit answered Cap N' Cork's rhetorical question affirmatively: "keeping alcohol out of minors' hands is a legitimate, indeed a powerful, interest."

538 F.3d at 613. Consistent with that direct precedent, the Court finds that reducing youth access to alcohol is a legitimate local interest.

## 2. Does the statute effectuate that interest?

Cap N' Cork argues here that, to the extent that keeping alcohol out of the hands of minors is a sufficient state interest, the statute at issue does little to effectuate this interest:

> It is matter of record that UPS drivers have been instructed in the proper method of checking for age verification. They will only leave the wine with an adult. This is true of FedEx and other common carriers which have been given training in permit states. Moreover, there are far fewer instances reported of wine getting into the hands of minors from delivery by common carriers than there [are] from minors getting alcoholic beverages from retail establishments themselves.

[Dkt. 17 at 9.] Unfortunately for Cap N' Cork and the Court, the "record" noted above does not exist in this case.

Citing to the Federal Trade Commission report, Cap N' Cork notes that "minors rarely buy wine over the Internet for delivery via common carrier because they prefer to buy alcohol for immediate consumption and do not want to pay additional shipping costs," and that "studies show that minors find it easy to buy wine in person at retail dealers." [Dkt. 29 at 6.] Cap N' Cork contends that "the UPS driver will obtain an adult signature upon delivery" of alcohol, thereby rendering § 7.1-3-15-3(d) unnecessary for effectuating the state interest.[5] [Dkt. 29 at 5.]

In contrast, ATC offers testimonial evidence from state excise officers revealing that face-to-face age verification is the primary tool for reducing youth access to alcohol, [dkt. 28-1 at 2-3]; specifically, the mandatory server training program which all holders of employee per-

---

[5] The Court is perplexed by Cap N' Cork's proffer of UPS as a viable surrogate in light of the preemption challenge discussed later. In one breath, it argues the ATC should be content to regulate UPS' delivery of wine, and in another it argues that the face-to-face delivery requirement illegally regulates a service of a common carrier in conflict with the Federal Aviation Administration Authorization Act of 1994. [Dkt. 29 at 1-2.]

mits must undertake, combats underage access to alcohol, [dkt 27 at 17].[6] Evidence from the excise officers responsible for this training program supports ATC's argument and likewise reveals that invalidating § 7.1-3-15-3(d) would create substantial enforcement burdens for the officers working to combat youth access to alcohol, as 1000 more wine retailers would be allowed to directly ship to customers with no face-to-face requirement. [Dkt. 28-1 at 2-3; dkt. 29 at 10.]

The *Baude* court made clear, and this Court agrees, that "the face-to-face requirement makes it harder for minors to get wine. Anything that raises the cost of an activity will diminish the quantity-not to zero, but no law is or need be fully effective." *Id*. Although Cap N' Cork expresses incredulity in its response brief about whether § 7.1-3-15-3(d) always results in face-to-face verification, [dkt. 29 at 8], the Court finds that it has presented virtually no quantifiable evidence to undermine the presumption that face-to-face requirements increase legality. Nor has it offered evidence that the requirement itself does nothing to reduce youth access to alcohol. Moreover, Cap N' Cork's contract with UPS does not specifically identify the manner in which UPS is to verify the age of the person whose adult signature is obtained, [dkt. 30-4], and the Court is skeptical that a prescription for the careful age verification procedures required by § 7.1-3-15-3(d) and its surrounding statutes would be implicit therein.

---

[6] Cap N' Cork objects to the admissibility of the personal opinions of Excise Officers Poindexter and Swallow, arguing that they are speculative under Fed. R. Evid. 601, 701 and 702. [Dkt. 29 at 9.] ATC responds that "these contentions are not only self-evident manifestations of the statutes, but that the personal knowledge of two long-time excise officers working for an agency "committed to reducing the availability of alcohol and tobacco products to minors" is sufficient to establish admissibility under Fed. R. Evid. 601 and 701. [Dkt. 31 at 4.] The Court agrees with ATC: evidence of the officers' personal knowledge is predicated on a properly laid foundation and admissible under Rules 601 and 701. Even if this were not the case, however, the court in *Baude* established that even without evidence of their effectiveness, face-to-face age verification requirements increase compliance with drinking age requirements. 538 F.3d at 614.

The Seventh Circuit has been clear that overcoming a motion for summary judgment requires more than mere speculation by the non-moving party. *Singer*, 593 F.3d at 533. In light of the paucity of evidence proffered by Cap N' Cork, the Court cannot find that § 7.1-3-15-3(d) does not effectuate the legitimate local interest of reducing youth access to alcohol.

### 3. Is the burden on commerce clearly excessive in relation to putative local interests?

Cap N' Cork argues that § 7.1-3-15-3(d) is unconstitutional because the burden it places on interstate commerce is "extreme," relative to its benefit. [Dkt. 17 at 9.] Many small wineries, it says, do not produce enough volume or have enough customers to obtain stable wholesale distribution for all of their products. [Dkt. 30-8 at 1-2.] They choose not to become permitted, and instead tend to use the fulfillment process. [Dkt. 30-6 at 1.] As such, Cap N' Cork contends that thousands of labels from smaller wineries throughout the United States, which are not available on the shelves of retail wine stores, are harmed by § 7.1-3-15-3(d). [Dkt. 29 at 7.] It further argues, "[m]any small out-of-state wineries cannot afford to pay the annual direct shipper's permit fee in Indiana to ship one or two cases of their wine each year." [Dkt. 29 at 3.] As Cap N' Cork explains, "Some small wineries have enough customers in a state other than its own to justify the expense of obtaining permits and setting up a direct shipping business, but many must use the more efficient fulfillment process to send small quantities of wine to states where they have few customers." [Dkt. 30-8 at 1-2.] Enforcing this law, Cap N' Cork argues, would "foreclose these wineries as well as the out-of-state fulfillment companies from engaging in interstate commerce." [*Id.*]

Again, Cap N' Cork relies heavily upon statements contained in the 2003 Federal Trade Commission Report, [dkt. 30-2], and the 2004 National Research Council Report, [dkt. 30-3], to

substantiate its assertions. Insofar as these reports are admissible, nothing in them, however, establishes that the Indiana statute at issue in this case burdens interstate commerce.

Aside from the national reports, Cap N' Cork has presented no evidence to substantiate the notion that § 7.1-3-15-3(d) poses an excessive burden—or any burden at all—on interstate commerce. Cap N' Cork has not provided evidence to show any quantifiable reduction in sales that might result if Cap N' Cork complied with the delivery restrictions imposed by § 7.1-3-15-3(d). At best, the Court can reasonably infer that it will cost more for Cap N' Cork to deliver beyond a fifteen mile radius. But no cost figures have been presented for the Court to determine whether Cap N' Cork would operate at an actual loss, or just less profit.

Nor has any evidence been proffered to show that the individually named Plaintiffs' wine purchases will be unfulfilled if Cap N' Cork does not deliver. The absence of this evidence speaks volumes: nothing in the statute at issue prohibits Cap N' Cork from selling or delivering its product, nor does it prevent the individually named Plaintiffs from buying it. Even if sufficient evidence were presented to show that any of the Plaintiffs would suffer actual loss, their financial loss would not be indicative of a burden on interstate commerce.

Furthermore, Cap N' Cork has offered no quantifiable evidence to show that § 7.1-3-15-3(d) burdens small wineries or out of state wineries. Section 7.1-3-15-3(d) does not prevent small or out-of-state wineries from offering their product in Indiana through the three-tier system or by purchasing permits that allow for direct shipping into Indiana—Cap N' Cork offers no evidence to suggest otherwise. Specifically, there is no evidence that small wineries cannot use the fulfillment process to sell to Indiana consumers through a wine dealer who may be more proximate to the consumer than Cap N' Cork. Even if the statute did disproportionately burden small

wineries, the Seventh Circuit has made clear that "[f]avoritism for large wineries over small wineries does not pose a constitutional problem." *Baude,* 538 F.3d at 615.

Although Cap N' Cork has raised theoretical discrimination arguments on behalf of entities ranging from trucks to wine clubs, § 7.1-3-15-3(d) ultimately has nothing to do with any of them. Again, the inability of Cap N' Cork to substantiate any quantifiable harm reveals what is really at issue in this case: Cap N' Cork wants to reduce its delivery costs by using a common carrier; the individual Plaintiffs want to get their wine without driving across the state to pick it up. These incidental burdens have no bearing on interstate commerce and do not give the Court reason to invalidate § 7.1-3-15-3(d) under the Commerce Clause.

Even though ATC is moving for judgment as a matter of law, "when challenging a law that treats in-state and out-of-state entities identically, whoever wants to upset the law bears the[] burden" of showing that the law is unconstitutional. *Baude* 538 at 613. Having brought the constitutional challenge at bar, Cap N' Cork's failure to come forth with admissible evidence at the summary judgment stage is fatal. *Celotex*, 477 U.S. at 323 (holding that Rule 56(c) requires summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Cap N' Cork failed to show that the face-to-face requirement imposes any quantifiable burden, let alone one great enough to supersede the benefits of the face-to-face requirement, which provides a barrier to youth access to alcohol and reduces enforcement costs of so doing. Although the law may have minimally harmful effects for certain wineries based on their size, model, or economic position, it "takes more than lawyers' talk to invalidate a statute under

*Pike.*"[7]  *Baude,* 538 F.3d at 613. Given that this statute passes muster under *Pike* in light of both *Granholm* and *Baude*, the Court finds it constitutional.  *Baude*, 538 F.3d at 614.

Consequently, the Court awards summary judgment for ATC on Cap N' Cork's Commerce Clause challenge.

### B) Cap N' Cork's Preemption Challenge § 7.1-3-15-3(d)

Cap N' Cork also argues that that the enforcement of the face-to-face delivery requirement set forth in § 7.1-3-15-3(d) regulates a service of a common carrier in a way that conflicts with the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), which says in relevant part that "a State … may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier." 49 U.S.C. § 14501(c)(1).  Cap N' Cork argues that the face-to-face delivery statute is preempted by the FAAAA, and that, accordingly, it must yield under the Supremacy Clause, Art. VI, cl. 2. [Dkt. 29. At 1-2.]

#### 1. Preemption under *Rowe*

Cap N' Cork argues that § 7.1-3-15-3(d) is preempted by the FAAAA under *Rowe v. N.H. Motor Transp. Assn.*, 552 U.S. 364 (2008).  [Dkt. 29 at 24.]

In *Rowe,* the Supreme Court held that "[s]tate enforcement actions having a connection with, or reference to" carrier "rates, routes, or services" are preempted by FAAAA.  522 U.S. 364, 370.  However, the *Rowe* court made clear that "not every state law that relates to a motor carrier's rate, route, or service is necessarily preempted.  To be preempted, the statute at issue

_____

[7] The Affidavit of Attorney James Tanford, [dkt. 30-1], does not substantively transform the "lawyers' talk"—it merely makes the same talk louder, and the Court must treat it as such.  Cap N' Cork should be mindful that "a lawyer cannot ordinarily represent a client and simultaneously serve as the client's witness."  *United States v. Marshall,* 75 F.3d 1097, 1106 (7th Cir.1996).

must have—directly or indirectly—a "significant and adverse impact in respect to the federal Act's ability to achieve its preemption-related objectives." *Id.* at 371-72. Therefore state laws that only have a tenuous, remote, or peripheral relationship to the rate, route or service of a motor carrier are not preempted. *Id*. at 370. Neither are statutes that do not adversely impact congressional objectives. *Id.* at 371-72.

Cap N' Cork argues, "The parties agree § 7.1-3-15-3(d) prohibits the permit holder from using common carriers to make its deliveries." [Dkt. 29 at 24.] As such, it contends, the Indiana law conflicts with the FAAAA. However, ATC argues that the Indiana law only regulates the *method* of wine delivery, not the common carriers themselves, which distinguishes this case from *Rowe* and alleviates concerns of preemption by the FAAAA. [Dkt. 31 at 16.]

The Court agrees that the case at issue is clearly distinguishable from that in *Rowe.* In *Rowe*, the Supreme Court invalidated two provisions of Maine laws governing the delivery of tobacco, which required tobacco retailers engaged in delivery sales to "utilize a [specific] delivery service," and then imposed stringent requirements on the carriers. 552 U.S. at 372. In addition, the statute at issue in *Rowe* imposed civil liability upon the carrier, "not simply for its knowing transport of (unpermitted) tobacco, but for the carrier's *failure sufficiently to examine every package.*" *Id*. at 372-73 (emphasis in original).

In contrast to the Maine statutes, the Indiana statute regulates wine dealers—not common carriers. Ind. Code § 7.1-3-15-3(d). There is no requirement, explicitly or implicitly, in § 7.1-3-15-3(d) that burdens carriers in any way. Prohibiting alcoholic beverage retailers from directly shipping alcohol in contravention of the three-tier system does not equate to fixing the "price, route, or service of any motor carrier" directly or indirectly. *Rowe*, 522 U.S. at 370. Moreover, neither § 7.1-3-15-3(d) nor § 7.1-5-11-1.5 imposes any liability on common carriers. Finally, the

Indiana statute regulates alcohol, which—quite unlike tobacco—is afforded the protection of the Twenty-First Amendment. *Granholm,* 544 U.S. at 462. Because the statute at issue does not regulate common carriers and is presumptively protected by the Twenty-First Amendment, the Indiana statute is not preempted by the FAAAA under *Rowe.*

### 2. Preemption under *Murphy*

In addition to claiming preemption under the authority of *Rowe*, Cap N' Cork also asserts that Indiana's direct shipping ban and delivery restrictions conflict with the federal policy promoted by FAAAA and is therefore preempted under *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1032-33 (7th Cir. 2008). [Dkt. 29 at 24.] Although Cap N' Cork does not provide a cogent argument on this point,[8] it appears that Cap N' Cork is making a conflict preemption claim, [dkt. 31 at 18], thereby implicitly arguing that "it would be impossible for a party to comply with both local and federal requirements, or that the challenged statute stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hoagland v. Town of Clear Lake*, 415 F.3d 693 (7th Cir. 2005).[9]

To determine whether state and federal laws are in conflict, it is necessary to "examine the federal statute as a whole and identify its purpose and intended effects." *Murphy,* 526 F.3d 1033. This analysis requires that we "consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." *Frank Bros. v. Wis. Dep't of*

---

[8] Cap N' Cork noted in its response brief that it was not prepared to argue this point on summary judgment because it anticipated genuine disputes about material facts. [Dkt. 29 at 4.] However, it says, "the State has elected not to question the adverse impact of the common carrier ban, but rather to make a purely legal argument that the law regulates wine retailers, not common carriers, …." [*Id.*] As such, Cap N' Cork concedes that the issue can be decided as a matter of law. [*Id.*]

[9] Preemption can take on three different forms: express preemption, field preemption, and conflict preemption, *Hoagland*, 415 F.3d at 696, but the analysis in *Murphy* is limited to conflict preemption. *See* 526 F.3d at 1028.

*Transp.*, 409 F.3d 880, 894 (7th Cir. 2005). Within this analytical framework, the Court must first determine the congressional objective for the statute at issue. *Murphy,* 526 F.3d 1033.

Although Congress' objective with respect to the delivery of alcohol or youth access to alcohol cannot be gleaned from the FAAAA itself, Congress expressed support for state regulation of alcohol shortly after the enactment of the FAAAA when it enacted the Sober Truth on Preventing Underage Drinking Ac, Pub. L. No. 109-422. In this Act, Congress stated:

> Alcohol is a unique product and should be regulated differently than other products by the States and Federal Government. States have primary authority to regulate alcohol distribution and sale, and the Federal Government should support and supplement these State efforts.
>
> States also have a responsibility to fight youth access to alcohol and reduce underage drinking. Continued State regulation and licensing of the manufacture, importation, sale, distribution, transportation and storage of alcoholic beverages are clearly in the public interest and are critical to promoting responsible consumption, preventing illegal access to alcohol by persons under 21 years of age from commercial and non-commercial sources, maintaining industry integrity and an orderly marketplace and furthering effective State tax collection.

42 U.S.C. § 290bb-25b(b)(7). Cap N' Cork does not dispute these objectives, nor does it provide alternative Congressional objectives that would change the assessment about whether either § 7.1-3-15-3(d) conflicts with those objectives.

In sum, Cap N' Cork has presented the Court no evidence or cogent argument that the Indiana law at issue conflicts whatsoever with congressional intent regarding state regulation of the delivery of alcohol or youth access to alcohol. Since Cap N' Cork has failed to provide evidence that it cannot comply with both state and federal law without compromising Congress' objectives, the Court finds that § 7.1-3-15-3(d) is not conflict-preempted under *Murphy.*

Because the Indiana statute is outside the scope of criticism under either *Rowe* or *Murphy*, the Court awards summary judgment for ATC on Cap N' Cork's preemption challenge.

## IV.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Cap N' Cork's Motion for Summary Judgment, [dkt. 16], and further **GRANTS** ATC's Motion for Summary Judgment, [dkt. 26]. Cap N' Cork shall take nothing by way of its Complaint. Judgment will issue accordingly.

12/06/2010

_Jane Magnus-Stinson_

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Robert David Epstein
EPSTEIN COHEN DONAHOE & MENDES
rdepstein@aol.com

Jason A. Flora
EPSTEIN COHEN DONAHOE MENDES & SEIF
jason.flora@gmail.com

James J. Hutton
OFFICE OF THE INDIANA ATTORNEY GENERAL
james.hutton@atg.in.gov

James Alexander Tanford
INDIANA UNIVERSITY SCHOOL OF LAW
tanford@indiana.edu